with case number 25-623 Allen versus Padilla, Mr. Goldman, whenever you're ready. Thank you, Your Honor. Good morning. May it please the court. My name is Jonathan Goldman. I represent the plaintiff appellant, Tracey Allen. The drastic remedy of summary judgment was unwarranted here and should be reversed because the evidence of pretext, particularly when combined with the prima facie case of discrimination and viewed in the totality of the record, and when all inferences and facts are viewed favorably to the plaintiff, formed a sufficient basis from which a reasonable jury could infer the ultimate determination of intentional discrimination and fine for the plaintiff. As the Supreme Court instructed in Reeves, there's a clear and strong inference that arises from a jury's disbelief of an employer's stated nondiscriminatory reason. From that finding, a jury can infer that once the employer has offered a reason and a jury's rejected that reason, most likely intentional discrimination is what remains. Here the district court found in reviewing the record that a reasonable jury could well find that the employer's stated reasons were in fact false and pretextual. And therefore, viewing that in combination with the prima facie case following Reeves, I believe should have allowed a jury to determine the ultimate issue. Now, I recognize that Reeves did have a caveat. It says it's not a per se rule. It's not every case that you have a prima facie case and pretext that a jury could find it. But I think that caveat has to be read in light of the two specific examples that the court gave when it explained that caveat. It says, for example, when the record conclusively reveals that there's another nondiscriminatory reason, or if there's a weak issue of fact as a pretext and abundant other evidence that discrimination did not occur, those are circumstances where perhaps summary judgment could be warranted. I think the court obviously had to leave some room for those types of cases on the margin. But I think Justice Ginsburg's concurrence is also important in determining the scope of that caveat about not having a per se rule. And Justice Ginsburg recognized, because of the strength of the inference that could flow from a finding of falsity, only really when, again, there's a conclusive finding or some abundant evidence of nondiscrimination, only in those circumstances should you take the case away from a jury. Otherwise, ordinarily, the jury should determine the question of discrimination. This court in Zimmerman, about a year after Reeves came down, Zimmerman was decided in 2001, recognized what Reeves had said, cited Justice Ginsburg's concurrence. And in a case which I think is similar to the Instinct case in terms of what the evidence showed in terms of a prima facie case and pretext, in terms of the strength and the probative value of the evidence, said that it was proper to allow the jury to decide the case. And in several other cases since then, we've cited in our brief at page 25 of our opening brief, the cases Medeiros, DeCuna, DeMarco, and Singer, this court reversed grants of judgment as a matter of law, where, again, I would submit to the court, and the cases speak for themselves, but I would submit the evidence was similar to the evidence in this case in terms of the strength of the prima facie cases, strength of the evidence of pretext, and reversed summary judgment, said that a jury should decide the ultimate issue. I think that's the case here. So Ms. Allen doesn't deny saying that she didn't want to work with Ms. Caroline. Is that right? She admitted that she said that, but she also aversed that. She said, but if that's what you want, I will certainly do it. So her version of events is— Well, we can't unsay something. I understand that that was her follow-up, but once you've said that you don't want to work with the person who's going to be the assistant or someone you have to work with closely, is that not a reasonable basis to pass over that person? I think it depends on how a jury finds the credibility of Dr. Padilla. I think based on all the evidence and based on how, if it believes Ms. Allen in terms of how that conversation went, and it finds Dr. Padilla not to be a credible witness, and again, credibility assessments are the function of the jury, I think a jury could find that, even though she said that. And again, he asked— What part of that inquiry turns on credibility? I mean, it's just a question of is this—this was one of the reasons that was given. And so you're saying if a jury disbelieves that is a reason? That's correct, because I think that reason requires a jury to believe that, in fact, is what motivated Dr. Padilla. And I think if a jury looked at the totality of the record, where he also says, I wanted somebody that was enthusiastic about this co-directorship, and I was so enthusiastic about this that I left the assistant director position open in hopes that we'd find a co-director sometime thereafter. But then eight, nine months thereafter, until he left the district, did absolutely nothing to try to find a co-director. So if a jury looked at that— Let me ask you about another aspect. Of course, Your Honor. What did—what did Mr. Padilla say that—or Dr. Padilla say that suggests that the decision was based on race? Well, again, he did not affirmatively use any sort of racial terms, and we admit that. That's not in the record. There's evidence in the record that she disclosed to Mr. McLemore that one of the reasons that she left South Carolina was because she felt there was racial hostility there. Mr. McLemore testified that he believes he conveyed that to Dr. Padilla. The way in which Dr. Padilla so drastically characterizes his conversation with Ms. Allen, diametrically opposed to what she says, she says, I was not hostile. I was calm. I was—they asked me for an honest opinion of what I thought of this co-directorship arrangement, which frankly shocked her. I mean, she was offered the job on December 10th. I think the record is very clear about that. The personnel change form shows that. So all of a sudden, out of the blue, she gets this call. What do you think about a co-directorship? Give us your thoughts. She said, here's my honest thoughts.  He obviously knew she was Black when he offered her the job. Why is it a reasonable inference that he withdrew the offer because he didn't want to—because he had some sort of anti-Black antics? Well, again, the lack of—the jury disbelieves what he says are the legitimate reasons. But the fact is that he hired her, and he knew what her race was when he hired her. I mean, the usual inference would be that if he had anti-Black animus, he wouldn't have hired her in the first place. Understood, Your Honor. As we argue in the brief, and does this Court recognize Judge Chin's decision in the Banks v. GM case, a reasonable jury could find, we think, in this case, that yes, he may have known what her race was at the time that he was considering her application. But then when she articulated the reason for leaving South Carolina, and then she gave her honest opinion and said, you know, this is what I really think. But then again, she said, I'll do it if you want me to, that he had a reconsideration, and he based it on a racial stereotype. Does this Court, again, recognize—could be found to be a stereotypical view in the Banks case? And we think that could be evidence, and a jury could find that if the facts are— Based on what? What would the jury find that based on? Again, based on—again, so in the Banks case, this Court— In this record, what could the jury rely on in concluding what you just said? The way in Dr. Padilla, again, completely mischaracterized her demeanor during this phone call, and took her honest, forthright opinion as to what she thought of the position, and didn't just, you know, tell him what he wanted to hear, and told her her honest views as she was asked for, that he took that in a stereotyped way, as again, in Banks, the Court— So, again, as we articulate in the brief, in the Banks case, the facts there were that the plaintiff had filed internal discrimination complaints, and the employer made her undergo a psychological evaluation with— We don't have anything like that here. No, I understand. I understand. But in that case, the Court said that when the doctor said, because you're telling us, you know, your honest views that this was discrimination, not something else about your history or background, you must have conflict resolution skills. You must have—you must have a problem, essentially, is how they put it. And the Court said that that could—that invokes a stereotype, which we think could be found here, again, based on how— What stereotype is that invoking? Well, as the Banks Court termed it, the quote was the angry black woman stereotype that was invoked in that case as a— What is the angry black woman stereotype? Help me understand that. Sure. Again, going—looking at this Court's decision in Banks, I think it—I think the way the Court interpreted in that case was the stereotype that somebody would give their honest, forthright views about something and push back in a manner that one with that stereotype wouldn't expect. And obviously, it's— And that's something that your suggestion could plausibly be concluded as conduct peculiar to black women? I'm sorry, I didn't hear that last part, Your Honor. And that is conduct you think someone could plausibly ascribe to black women? To— To black women. Oh, I think that's what the Court said in the Banks case, you know, and that's how we interpret it. And I don't— What do you mean, that's how we interpret it? What does that mean? I think that's how—I think that's what the Court's decision said in the Banks case. And I could pull it up for my rebuttal time to cite the specific language. I'd be happy to do that. Okay. But— All right. You've reserved a couple minutes for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors. Matthew Hurdy for Appellee Dr. Roberto Padilla. And may it please the Court, the District Court made the correct decision that the evidence on record would never be sufficient to permit a fact finder to find that my client had used race as a determinative factor in his decision to pass over her candidacy for director of the Newburgh Public Library. And the Court should uphold the decision below. Mr. Goldman's argument that some of the reasoning applied in Banks could stand in here to support at finding that my client used race as a determinative factor is baloney. The facts in Banks are nothing at all like the facts here. The plaintiff in Banks had been subject to consistent racial epithets and what was obviously a culture of pervasive racist and sexist discrimination. And that was part of what led this Court in Banks to conclude that the psychologist who examined her pursuant to G.M.'s order, when that psychologist ascribed her workplace problems to what Mr. Goldman referred to as an angry black woman stereotype, that reasoning has no place here. Am I correct in understanding that the District for not hiring her, that the whole problem was whether that was a pretext for race discrimination, but there was a finding that the jury could have rejected the reason given as the true reason? I think your Honor is partially correct. The District Court did find that at least one reason could be subject to vague aspersions. And that's because the reason put forward was that they wanted to have a co-directorship. And in fact, they never had a co-directorship. So that casts some doubt on the bona fides of that reason. Am I correct in understanding this? I mean, this has to be looked at in the light most favorable to the plaintiff. That's the way that reasoning goes, your Honor. But I would submit that whether or not—I don't think there's really any true doubt that my client sought to create a co-directorship because he wanted to elevate both Ms. Caroline and the plaintiff appellee, Ms. Allen, to the co-directorship. But whether or not the co-directorship was a genuine goal is not a reason for my client's decision not to hire or recommend for hire Ms. Allen. The reason that my client decided not to is because she said she didn't want to work with Ms. Caroline, which is not in question. That is not in question. Not at all. The district court did not question it. Mr. Goldman is not questioning it. Ms. Allen also told my client she didn't like his idea. That part's not in question. What happened was the idea of a co-directorship was born in the midst of the hiring process, so it was a little bit uncertain. But what is certain is that Ms. Allen disparaged my client's management ideas to his face or on the phone. My client disparaged the existing co-director—I'm sorry. Ms. Allen disparaged the existing co-director. Those things are not in question, and those are unquestionably legitimate, non-discriminatory— Is it also not in question that she was asked her view? I'm not sure that's what happened. My understanding is the record reflects Mr. McElmore called Ms. Allen on the phone and said, hey, we're considering a co-directorship. I guess he did say, what do you think? The phone conversation is not recorded. Whether she was asked her view, I don't know. She certainly gave her view, and her view was discussed. I'm just trying to figure out if the case were to be at a trial before a jury, your client proffers that they wanted a co-directorship and she disparaged that idea. The jury finds that that wasn't your real reason. The district court found that that would be possible, that the jury would reject that reason. What are we left with? We're left with the non-discriminatory reason if they don't accept the proffered reason. I'm a little bit confused what your Honor is saying is the proffered reason. The proffered reason is that she said— She wanted to have a co-directorship, and she didn't want that. The jury finds you didn't care about a co-directorship as evidenced by the fact that you didn't put one into place after she was terminated, after the offer was withdrawn. Yes, your Honor. The fact that Ms. Allen stated clearly that she did not want to work with the existing acting library director and her would-be assistant director, Ms. Carolann, there is that. That is not in question. And whether Ms. Allen disparaged an idea that ultimately did not come to fruition does not change the fact that Ms. Allen disparaged Mr. Padilla's ideas to him. He was going to be her boss, and she told him that she didn't like his ideas. Whether those ideas ultimately came to be is besides the point. The point is she disagreed with him about his management prerogatives. That is not in question. There's no question that they had a disagreement on the phone about whether a co-directorship was a good idea and whether Mr. Padilla's ideas were good ideas. She told Mr. Padilla that his idea was a on the phone and tell a prospective boss that your ideas are bad ideas. I mean, maybe in a creative way that's a good approach for an interview, but that's not really standard practice. And so neither of those reasons are questioned here. Ms. Allen said that Mr. Padilla's idea was a bad idea, and then Ms. Allen said that she did not want to work with the existing assistant director. Those are the proper reasons. They have not been questioned. So there is no evidence on the record to establish that my client used race as a determinative factor. Here in a Section 1983 case, we had the but-for standard of causation, which requires that the plaintiff establish that race was a determinative factor, and there's simply no evidence of that. Um, my client is allowed to say that he and Ms. Allen got into a disagreement during the interview process, and that does not mean that he's a racist or that he used racist factors to make his decision. I have nothing further. Thank you. Thank you, counsel. Thank you, your honors. Help me with something in the record that has escaped me. Before she applied for this job, she had been in the Newburgh area for how long? Um, she had, she was in, she wasn't in Newburgh at that time. She was up in the Rensselaer area. She was, she was at RPI. Okay, so those places are near each other? It's about, it's a little over an hour. I'm from the city. It's, uh, it's a little, probably about an hour and 15, hour and 20 minutes up the thruway from Newburgh. So how long had she been in that part of, uh, how long after she left South Carolina did she, is she applying for this job? So she, she was at RPI starting in February of 2019. She left South Carolina at the end of 2018, early 2019. So it was about two years before applying for the job in Newburgh. That she was working in New York. Correct, your honor. Thank you. Just addressing real quick before I get to the Binks decision, counsel, a few of counsel's points about the conversation. First of all, I guess it's a matter of semantics. I don't know that the record bears that she said the words bad idea. This was a bad idea. The sequence of events were that Mr. McLemore, who is the HR director, called her first and asked her, as I think Judge Radji pointed out, her views on the position. We're thinking of a co-directorship. Again, I know it's disputed, but my client's version of Binks is we're thinking about a co-directorship. What do you think? And this completely threw her for a loop, because again, she had already been offered the job. And she said, is this a deal breaker? I mean, my honest opinion is I don't think it's a good idea. I don't think it works in libraries. You know, if you want me to be a director of a library, I would think you want me to speak my mind and be honest and open about my views about how something should be run. But she said, is this- I know we've asked you about this before, but I just want to be sure- Of course. I have your position clear on this. If he was a racist, why would he have offered her the job in the first place? Well, again, according to his own account, he was hesitant about offering the job in the first place. His own testimony is, well, I told Macklemore to offer the job- The fact is, he did offer the job in the first place. My question is, if he was a racist, why would he have done something like that? Well, again, as this court has said also, I think we cite it in the Brown case, just because a manager treats certain individuals in a particular protected class or a particular race in a favorable way doesn't necessarily mean that they're not discriminating with respect to another individual. And I understand that this is the same individual, and the same actor inference is something that the court takes into account. And certainly, a jury could consider that. Obviously, it'll be argued by the other side. But I think a jury has to decide, when faced with your Honor's point, why would he hire her if he knew, and why would he not hire her because of her race if he already offered her job? And so if you were trying to get over that hurdle before a jury, what would you be telling the jury? I would be telling a jury, then why would he lie about the reasons he's telling you he didn't give her this job? And if a jury found that he lied, a jury could find, there could be any number of reasons why he may have initially offered it. He was then to your burden. That blows away your but for responsibility, your but for her, if there could be any number of reasons. No, no. The point I'm trying to make is, once a jury finds that he ultimately decided not to hire the African-American candidate and hire only the white candidate, and once a jury finds that the reasons that he says that he did that, because I really wanted somebody enthusiastic about the co-directorship, and she was very definitive that she didn't want to do this, when in fact she said that she would do this. And he offers no other non-discriminatory reason other than those which a jury could reject. And if a jury did reject it, a jury could find that he's being disingenuous. Then I think a jury could find, again, that's the teaching of Reeves. If there's nothing, if there's no other explanation in the record, a jury could find that the reason that the decision-maker is dissembling is to mask a discriminatory reason. We also know in the briefs, by the way, that at the time, he was also, then also being sued in another case where they were alleging racial discrimination. So maybe once he saw that this is somebody who's going to stand up to him and give him her honest views, he developed the concern that this could turn into something that it ultimately did. But I guess the point is that...  Thank you, Your Honor. Thank you, counsel. Thank you both. We'll take the case under advisement. Appreciate it. Thank you, Your Honor.